IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRENDA DART,** | : | |
| **Plaintiff** | : | **Civ. No. 13-CV-02930** |
| | : | |
| **v.** | : | |
| | : | |
| **COUNTY OF LEBANON, CEDAR** | : | |
| **HAVEN NURSING HOME,** | : | |
| **MELINDA PEIFFER, and** | : | |
| **EDWARD SCHLEGEL,** | : | |
| | : | **Judge Sylvia H. Rambo** |
| **Defendants** | : | |

# M E M O R A N D U M

In this civil action, Plaintiff, a former employee of Defendant County of Lebanon, alleges that the County unlawfully discriminated against her on the basis of her disability and religion, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 ("Title VII"), and the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951 ("PHRA"), and unlawfully retaliated against her for filing union grievances, initiating a workers' compensation proceeding, and exercising her rights to free speech and religion, in violation of 42 U.S.C. § 1983 ("Section 1983") and the PHRA. (Doc. 21.) Additionally, Plaintiff asserts a pendent Pennsylvania common law tort claim for intentional infliction of emotional distress. (*Id.*) Plaintiff claims that she was subject to verbal harassment, humiliation, and insults by her supervisor, and that, rather than taking appropriate action to end the harassment, her employer retaliated against her for reporting it. Further, Plaintiff claims that her employer failed to reasonably accommodate her disability. Presently before the court is Defendants' motion to dismiss (Doc. 22), which challenges whether Plaintiff sufficiently pleaded that she was subject to employment discrimination, retaliation,

and intentional infliction of emotional distress.  For the reasons that follow, the court finds that Plaintiff has failed to sufficiently plead her causes of action and will grant Defendants' motion to dismiss in its entirety.

## I.       Background

As is required when deciding a motion to dismiss, the court will accept the well-pleaded factual averments set forth in the amended complaint (Doc. 21) as true and view them in the light most favorable to Plaintiff as the nonmoving party.

### A.    Factual Background

Defendant County of Lebanon ("the County") is the municipal government for Lebanon County, which is located within the Middle District of Pennsylvania.  (*Id*. at ¶ 8.)  The County owns, operates, and manages Cedar Haven Nursing Home ("Cedar Haven").[1]  (*Id*.)  Defendant Melinda Peiffer ("Defendant Peiffer") is the Director of Human Resources for Cedar Haven (*id*. at ¶ 9), and Defendant Edward Schlegel ("Defendant Schlegel") is Cedar Haven's Administrator (*id*. at ¶ 10.)  Plaintiff Brenda Dart ("Plaintiff") began her employment as an assistant beautician at Cedar Haven in 2005 (*id*. at ¶ 15), and continued in that position until March 26, 2012 (*id.* at ¶ 17).  In this capacity, Plaintiff was employed full-time as a county employee (*id*. at ¶ 15) and was a bargaining unit member, subject to a collective bargaining agreement between the County and the union, AFSCME. During the time period relevant to this action, Plaintiff and her supervisor, Deborah

---

[1]  Cedar Haven was previously a defendant in this action, but was dismissed by agreement of the parties on March 31, 2014.  (*See* Doc. 17.)

Krammes ("Supervisor Krammes"), were the only two beauticians employed at Cedar Haven. (*Id.* at ¶ 17.)

Immediately upon the commencement of Plaintiff's employment, Supervisor Krammes began harassing her. At first, the harassment seemed to stem from Supervisor Krammes' belief that the County should have hired her friend, who she believed was a better stylist than Plaintiff, for the assistant beautician position. (*Id.* at ¶ 22.) However, the harassment continued throughout the course of Plaintiff's seven year employment, with Supervisor Krammes repeatedly insulting Plaintiff and humiliating her in front of Cedar Haven residents and employees. (*Id.* at ¶¶ 21-22.) For example, Supervisor Krammes was overly critical of Plaintiff's work and frequently told Plaintiff that she should be fired and would not be employable at a "real salon." (*Id.* at ¶ 23.) She called Plaintiff "dumb" and "crazy," and used other similarly derogatory remarks related to Plaintiff's alleged incompetence. (*Id.* at ¶¶ 22-23.)[2] Supervisor Krammes was also rude and distant to Plaintiff, and interfered with Plaintiff's client relationships by accusing her of poor work performance, carelessness, and alleging that Plaintiff's customers were dissatisfied. (*Id.* at ¶ 24.) This difficult work environment caused Plaintiff to suffer stress, depression, and anxiety, for which she sought treatment during two medical leaves in 2009 and 2011. (*Id.* at ¶¶ 25, 27.)

In accordance with the County's harassment policy, Plaintiff reported Supervisor Krammes's conduct to Defendants Peiffer and Schlegel.[3] However,

---

[2] Plaintiff, however, received fully satisfactory work reviews when Supervisor Krammes was on leave in 2008 and 2010. (Doc. 21, ¶ 26.)

[3] The amended complaint states that Plaintiff last reported the harassment to Defendants
(continued...)

rather than addressing the harassment, Defendant Schlegel began subjecting Plaintiff to similar behavior "that continued through the years." (*Id.* at ¶¶ 29, 35.)  For example, Defendant Schlegel remarked to Plaintiff that "a blind person could do better than you" and asked, "do you want to sign your resignation now?" (*Id.*)

Pursuant to her collective bargaining agreement, Plaintiff began filing grievances in 2009 against Supervisor Krammes for harassment, hostile work conditions, and false accusations of poor performance. (*Id.* at ¶ 30.)  Plaintiff claims that in retaliation for filing these union grievances, Defendant Schlegel terminated Plaintiff's employment on October 11, 2011, but immediately revoked the termination and instead changed Plaintiff's hours to nights and weekends. (*Id.* at ¶ 31.)  The new schedule reduced Plaintiff's clientele and interfered with her ability to attend church and Bible study. (*Id.* at ¶ 32.)  It also provided Supervisor Krammes with unbridled access and control over Plaintiff's clients because Plaintiff was not present to defend herself against Supervisor Krammes's false allegations regarding Plaintiff's work performance. (*Id.* at ¶¶ 34-35.)

On October 24, 2011, Plaintiff reported Supervisor Krammes's harassment to County Commissioner Jo Ellen Litz. (*Id.* at ¶ 36.)  In her email, Plaintiff wrote that she was "constantly being harassed by [her] boss" and that whenever she complained about it to Defendant Schlegel, she would receive a poor performance review. (*Id.* at Ex. F.)  Plaintiff also wrote that she "was told to work nights and weekends" so that "[Supervisor Krammes] cant [sic] harass [her]," even though "they" know that she had taken this particular position because the schedule

---

[3](...continued)
Peiffer and Schlegel in 2011, but provides no information as to when Plaintiff first reported the conduct or how many times Plaintiff made reports. (*See id.* at ¶ 28.)

enabled her to attend church activities on Saturdays and Sundays.  (*Id.*)  When she told Defendant Schlegel that the new schedule conflicted with her religious activities, he "said tuff [sic] not my problem."  (*Id.*)  Commissioner Litz responded that Plaintiff needed to pursue her complaints through the union.  (*See id.*)

On November 4, 2011, the County removed Plaintiff's Sunday hours. (*Id*. at ¶ 37.)  However, Plaintiff was still required to work Saturdays and evenings, which prohibited her from participating in certain religious activities.  (*Id.*)

Plaintiff took paid disability-related medical leave for extreme anxiety and depression from November 9, 2011, through November 29, 2011.  (*Id.* at ¶ 38.) Thereafter, the County approved additional non-paid medical leave for Plaintiff, pursuant to the Family Medical Leave Act ("FMLA"), beginning on December 23, 2011.  (*Id.* at ¶ 39.)  On December 28, 2011, Plaintiff filed a workers' compensation claim for a work injury related to workplace harassment, but benefits were denied by the insurance carrier/third-party administrator.  (*Id.* at ¶ 40.)

On February 28, 2012, a few weeks prior to the expiration of Plaintiff's FMLA leave, Plaintiff's counsel issued a letter to the County in which she conditioned Plaintiff's return to work upon the following: (1) that Plaintiff's schedule return to Monday through Friday from 8:30 a.m. to 4:00 p.m.; (2) that Plaintiff no longer be required to report to Supervisor Krammes; and (3) that all "requests from [Cedar Haven] residents or their families be directed straight to [Plaintiff] not through her supervisor."  (*Id.* at ¶ 43, Ex. J.)  In response, counsel for the County advised that Plaintiff's request for another supervisor was not feasible because Cedar Haven only employed one beautician supervisor.  (*Id.* at Ex. K, p. 2.) Counsel further advised that Cedar Haven was "constrained by union contracts and

[Plaintiff]'s ability to work on the clinical side of its operation," and that Cedar Haven did not have any alternate positions to offer Plaintiff at that time. (*Id.*)

Due to the County's failure to accommodate her proposed restrictions, Plaintiff did not return to work when her FMLA leave expired on March 23, 2012. (*See id.* at Ex. L.)  Consequently, the County terminated her employment effective March 27, 2012.[4]  (*See id.*)

Approximately three weeks after the termination of her employment, Plaintiff submitted an application for a docket specialist position in the domestic relations office for the County.  (*Id.* at ¶¶ 49-50, Ex. Q.)  She was not hired for the position.  Thereafter, Supervisor Krammes retired from her position as supervisor and was replaced by a part-time beautician with the Cedar Haven salon.  (*Id.* at ¶ 52.)  Upon Supervisor Krammes's departure, the County did not offer Plaintiff re-employment or the opportunity to apply for the position vacated by Supervisor Krammes.  (*Id.*)

---

[4]  Plaintiff emphasizes that the labels Defendants have ascribed to her separation of employment misrepresent the situation, noting that the County suggested she "quit," that Defendant Schlegel falsely accused her of voluntarily resigning ("quitting"), and that Defendant Peiffer stated that the County terminated Plaintiff's employment because she failed to return from medical leave.  (*See id.* at ¶ 47.)  Plaintiff claims that "[t]he false accusations and numerous alleged reasons for discharging [her] were a pretext for discrimination."  (*Id.*)  However, the exhibits attached to the amended complaint clearly demonstrate that Plaintiff's separation from her employment was due to her failure to return to work following her approved leave, regardless of the justification.  (*See id.* at Exs. L-N.)  Whether the separation of employment was technically a "termination" or resulted from Plaintiff "quitting" is not significant to the instant matter.  Plaintiff was formally terminated, but the termination was triggered by Plaintiff's refusal to return to work.  Plaintiff's claim that the County provided "numerous alleged reasons for discharging [Plaintiff]" (*id.* at ¶ 47) appears to be a thinly-veiled attempt to create a factual dispute where none truly exists.

### B.    Procedural Background

Plaintiff filed administrative claims with the PHRC and the Equal Employment Opportunity Commission ("EEOC").  At Plaintiff's request, the PHRC and EEOC issued right to sue letters without making a determination.  (*Id.* at Exs. S & T.)  On December 4, 2013, Plaintiff initiated this lawsuit by filing a complaint against the County, Cedar Haven, Defendant Peiffer, and Defendant Schlegel.  (Doc. 1.)  On February 24, 2014, Defendants filed a motion to dismiss (Doc. 9) and brief in support (Doc. 14).  By stipulation dated March 31, 2014, Plaintiff agreed to dismiss Cedar Haven as a named defendant because it is not a suable entity separate and apart from the County.  (Doc. 17.)

On April 11, 2014, Plaintiff filed an amended complaint, wherein she asserted the following five claims: (1) retaliation in violation of Section 1983 against all defendants (Count I); (2) religious discrimination in violation of Title VII against the County of Lebanon (Count II);[5] (3) disability discrimination in violation of the ADA against the County of Lebanon (Count III); (4) retaliation and disability and/or religious discrimination in violation of the PHRA against all defendants (Count IV); and intentional infliction of emotional distress against Defendant Schlegel (Count V).  (Doc. 21.)  Defendants filed a motion to dismiss the amended complaint for failure to state a claim on April 24, 2014 (Doc. 22), followed by a brief in support on May 8, 2014 (Doc. 25).  Plaintiff filed a brief in opposition on May 22, 2014 (Doc.

---

[5]  Plaintiff did not specify the manner in which Defendants purportedly violated Title VII. However, in her brief in opposition to Defendants' motion to dismiss, Plaintiff uses the caption, "Title VII Religious Discrimination" and proceeds to discuss Count II as a religious discrimination claim. (*See* Doc. 26, pp. 18-19).  Accordingly, the court will address Count II as a claim for religious discrimination in violation of Title VII.

26), and Defendants filed a reply brief on June 5, 2014 (Doc. 27).  Therefore, the motion is fully briefed and ripe for disposition.

## II.        Legal Standard

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint.  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  To survive a motion to dismiss, the factual allegations in the complaint must be sufficient to make the claim for relief more than just speculative.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

It remains true, as Plaintiff indicates numerous times within her brief in opposition to the motion to dismiss, that the Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which she bases her claim.  Rather, Rule 8 requires the complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The plaintiff's short and plain statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (quoting *Conley*, 355 U.S. at 47).  However, Plaintiff fails to recognize that, to withstand a motion to dismiss, the complaint must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570).  This

"'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *West Penn Allegheny Health Sys. Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citing *Phillips*, 515 F.3d at 234).

In assessing the merits of a motion to dismiss, a court's obligation to accept allegations as true does not apply to legal conclusions. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557) (internal citations omitted). Thus, a court must first identify those allegations in a complaint that are mere conclusions and are not entitled to an assumption of the truth and then consider whether the complaint's factual allegations plausibly suggest an entitlement to relief. *Id*. at 678.

## III.      <u>Discussion</u>

Plaintiff's claims, brought pursuant to Section 1983, Title VII, the ADA, and the PHRA, hinge on allegations that Defendants discriminated against her based on her disability and/or religion, and retaliated against her for, *inter alia*, reporting harassment, filing union grievances, filing for unemployment compensation, and/or exercising her right to religion. Defendants have moved to dismiss the amended complaint in its entirety for failure to state a claim upon which relief can be granted. Because the court finds that Plaintiff is attempting to manufacture discrimination and retaliation claims out of an interpersonal dispute between Plaintiff and her supervisor, which appears unrelated to any of Plaintiff's

alleged protected activities or statuses, the court will dismiss the complaint in its entirety.

### A.    Federal Constitutional Claims Under Section 1983

In Count I of her amended complaint, Plaintiff asserts claims for retaliation pursuant to Section 1983, contending that Defendants unlawfully retaliated against her for the exercise of her constitutional rights in violation of the First Amendment.  Defendants collectively attack the merits of Plaintiff's claims and raise several arguments in response to Plaintiff's assertions.  In addition, Defendants Peiffer and Schlegel contend that Plaintiff has failed to allege personal involvement sufficient to establish Section 1983 liability against them, and the County asserts that Plaintiff has failed to identify an official policy or custom of discrimination pursuant to *Monell* and its progeny.  Plaintiff responds with conclusory arguments and fails to direct the court to any allegations sufficient to support her claims.

Plaintiff has alleged that Defendants violated her constitutional rights under the First Amendment by retaliating against her for exercising her rights to petition the government and of freedom of speech and religion.[6]  (*See* Doc. 21, ¶¶ 67-78.)  Pursuant to a well-recognized framework, to establish a prima facie case of retaliation under the First Amendment, the plaintiff must show that she engaged in activity that is protected by the First Amendment, and that the protected activity was a substantial factor in the adverse employment action.  *See Gorum v. Sessoms*, 561 F.3d 179, 184 (3d. Cir. 2009); *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006).  If the plaintiff makes this prima facie showing, the burden then shifts to

---

[6] Plaintiff also makes vague references to alleged denials of her rights guaranteed by the Constitution and federal law.  (*See* Doc. 21, ¶¶ 71, 73, 75).  To the extent Plaintiff is asserting violations of her rights in addition to those specified above, the court cannot determine the nature of these claims.

the employer to show "that the same adverse action would have taken place in the absence of the protected conduct." *Hill v. City of Scranton*, 411 F.3d 118, 127 (3d Cir. 2005). The Third Circuit has instructed that the first part of this test regarding whether the activity was protected by the First Amendment is a question of law for the court, whereas the second and third factors are typically factual questions for the jury. *Hill*, 411 F.3d at 127 (citing *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004)). However, the Third Circuit has also instructed that the second and third factors are properly reserved for the jury only where "*genuine* questions of fact" remain unresolved. *Id.* (emphasis in original). In this case, the court finds that these factors should not be committed to a jury's consideration because the facts alleged, when taken as true, do not establish that Plaintiff engaged in protected activity.

At the outset, the court will dispense with Plaintiff's claim that she was retaliated against based on her religion. Putting aside Plaintiff's conclusory allegations that Defendants retaliated against her for invoking her right of freedom of religion (*see, e.g.*, Doc. 21, ¶¶ 70-71), the court cannot find any factual allegations supporting Plaintiff's claim that Defendants retaliated against her on this basis that would "raise [her] right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff claims that, in retaliation for reporting her supervisor's harassment, she was given a new work schedule, which primarily involved working evening and weekend hours, thereby impeding her ability to attend religious activities. (*See* Doc. 21, ¶ 32.) Plaintiff characterizes this change in her schedule as "wrongful interfere[nce] with [her] freedom to practice Christianity." (*Id.* at ¶ 33.) Even assuming, as the court must on a motion to dismiss, that the new schedule wrongfully interfered with Plaintiff's ability to practice her religion, Plaintiff specifically alleged

11

that the revised schedule was the *form* of retaliation, not that the schedule was created in retaliation for engaging in the practice of her religion.  Accordingly, Plaintiff has failed to sufficiently assert an First Amendment retaliation claim on the basis of her religion.

Plaintiff also premises her Section 1983 claim on allegations that Defendants retaliated against her for complaining of her supervisor's harassment, both directly to Cedar Haven administrators and through the union grievance process, in violation of her right to free speech,[7] and for filing union grievances and a workers' compensation claim, which she contends was in violation of her right to petition the government.  These claims must fail because Plaintiff has failed to allege that her underlying actions involved matters of public concern.

The decisional law shaping a public employee's rights to free speech and to petition the government has balanced the employee's interest in free expression against the interest of the governmental entity and the public in the efficiency and effectiveness of public business.  The Supreme Court has emphasized that, in order for a municipal employee to proceed with a Section 1983 civil rights claim for retaliation, the underlying statement or petition that triggered the defendant's allegedly retaliatory action must have touched on matters of "public concern."  *Pickering v. Board of Ed.*, 391 U.S. 563, 568 (1968); *see also Borough of Duryea v. Guarnieri*, — U.S. —, 131 S.Ct. 2488, 2494 (2011) (extending *Pickering*

---

[7] Although Plaintiff's amended complaint fails to identify the speech at issue, a fair reading of the complaint indicates that Plaintiff is referring to the complaints she made to her Cedar Haven administrators, both verbally and through email, and to the speech contained within her union grievances.

to claims brought pursuant to the Petition Clause[8]).  As the Court has noted, the public concern requirement adopted in *Pickering* reflects "the common sense realization that government offices could not function if every employment decision became a constitutional matter." *Connick v. Myers*, 461 U.S. 138, 143 (1983). Indeed, "[t]he government's interest in managing its internal affairs requires proper restraints on the invocation of rights by employees when the workplace or the government employer's responsibilities may be affected." *Guarnieri*, 131 S.Ct. at 2497.  Therefore, "a citizen who accepts public employment 'must accept certain limitations to his or her freedom.'" *Id*. at 2494; *see Waters v. Churchill*, 511 U.S. 661, 675 (1994) ("When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her.").  If the public employee speaks or petitions on a matter of purely private concern, the employee's First Amendment interest must give way. *Guarnieri*, 131 S.Ct. at 2497.

Whether an employee's speech or petition addresses a matter of public concern must be determined "by the content, form, and context" of the speech or petition. *Guarnieri*, 131 S.Ct. at 2501 (citing *Connick*, 461 U.S. at 147-148, and n.7). The inquiry into the protected status of the speech or petition is one of law, not fact, *see Connick*, 461 U.S. at 148 n.7, and no one factor is dispositive, *Snyder v. Phelps*,

---

[8]  Prior to the Supreme Court decision in *Guarnieri*, the Third Circuit had distinguished First Amendment retaliation claims involving the Petition Clause from such claims involving the Speech Clause, holding that, contrary to requirements for speech protection, the plaintiff need not show that the subject matter of a formal petition involved a matter of public concern.  *Foraker v. Chaffinch*, 501 F.3d 231, 236 (3d Cir. 2007).  In *Guarnieri*, the Supreme Court held that the public concern test applies to both Petition Clause and Speech Clause claims, thereby abrogating the Third Circuit decisions to the contrary.  131 S.Ct. at 2500-2501.

— U.S. —, 131 S.Ct. 1207, 1217 (2013).   Rather, "it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." *Id.* at 1216.   The ultimate question a court must answer is "whether the speech or petition relates to a matter of public concern, [*i.e.*], to 'something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication.'" *Massi v. City of Phila.*, Civ. No. 12-1309, 2013 WL 6388519, *12 (E.D. Pa. Dec. 6, 2013) (quoting *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004)).   "Garden variety employment beefs do not, in general, qualify for constitutional protection." *Wagner v. City of Holyoke*, 241 F. Supp. 2d 78, 90 (D. Mass. 2003) (citing *Myers*, 461 U.S. at 147).

In the matter *sub judice*, Plaintiff alleges, in part, that she was subjected to repeated insults and verbal abuse by Supervisor Krammes and later by Defendant Schlegel, and that she was retaliated against for taking action to stop the harassment. Specifically, Plaintiff claims that she was retaliated against for reporting the harassment to her employer and to the union via union grievances.   Notably, Plaintiff does not allege that any of the harassment by Supervisor Krammes or Defendant Schlegel was related to a protected status.[9]   To the contrary, Plaintiff alleged that

---

[9]   In her brief in opposition to the motion to dismiss, Plaintiff asserts that she was retaliated against "as a result of filing formal redress with the Union that stemmed from *disability related harassment* . . . ." (Doc. 26, p. 15 (emphasis added).)   Plaintiff makes a similar argument regarding her filing a workers' compensation claim. (*See id.* at p. 16.)   Additionally, Plaintiff claims that she "particularly plead detailed harassment and bullying by Defendant Administrator Schlegel that falls under Plaintiff's protected status for disability and religion.   (*Id.* at p. 17.)   However, the aforementioned statements are not representative, in any way, of the allegations in the amended complaint.   Indeed, the amended complaint is devoid of any facts to support Plaintiff's blanket allegations that any of Plaintiff's purported protected activities were taken in response to disability-based or religious-based harassment. Rather, as stated above, Plaintiff explicitly and repeatedly states that Supervisor Krammes's harassment stemmed from her frustration that Plaintiff was hired over her friend (*see* Doc. 21, ¶ 22) and from her false belief that Plaintiff's work performance was sub par (*see id.* at ¶¶ 22-26), and that Defendant
(continued...)

Supervisor Krammes's "bullying" resulted from her frustration that Plaintiff was hired rather than her friend and from her perceiving Plaintiff to be incompetent. (*See* Doc. 21, ¶¶ 22-26.) Likewise, Plaintiff alleged that Defendant Schlegel's "bullying and abuse" resulted from her reporting Supervisor Krammes and involved the use of performance-related insults. (*See id.* at ¶¶ 28-29.) Bullying that is unrelated to an employee's protected status does not constitute a violation of the employee's constitutional rights simply because it occurs in the workplace. *See Mufti v. Aarsand & Co., Inc.*, 667 F. Supp. 2d 535, 544 ("Title VII protects only against harassment based on discrimination against a protected class; it is not a 'general civility code for the American workplace.'") (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998)). Indeed, "to presume that all matters which transpire within a government office are of public concern would mean that virtually every remark – and certainly every criticism directed at a public official – would plant the seed of a constitutional case." *Myers*, 461 U.S. at 149. Because the alleged speech at issue here involved nothing more than garden variety complaints about Plaintiff's own job, it falls far short of attaining sufficient magnitude to constitute matters of public concern.

Plaintiff's claim that her filing for workers' compensation constituted protected activity also fails. Although the Third Circuit has characterized workers' compensation claims as "examples of formal petitions" protected under the Petitions

---

(...continued)
Schlegel's harassment resulted from her reporting Supervisor Krammes's harassment. In regard to the latter, Dart specifically alleged that she reported harassment on the basis of her poor job performance, which she deemed to be overly critical. (*See id.* ¶¶ 22-31.) An employer is not constitutionally obligated to respond to allegations of harassment where the alleged harassment is not based on the employee's protected class status.

Clause, *Foraker v. Chaffinch*, 501 F.3d 231, 236 (3d Cir. 2007), such claims do not implicate a matter of public concern insofar as they seek only "an award of individualized benefits for a specific job-related injury." *Cruz-Smith v. Sinclair*, Civ. No. 10-3609, 2011 WL 3652462, *5 (E.D. Pa. Aug. 9, 2011) (quoting *Hoeft v. Dommisee*, 352 F. App'x 77, 81 (7th Cir. 2009) (holding that a conspiracy aimed at getting a plaintiff fired after he announced his intention to apply for workers' compensation benefits would not violate the First Amendment because the plaintiff's desire for such benefits implicated only a personal interest)).  Because Plaintiff does not allege that her workers' compensation claim sought anything other than an award for individual benefits, the filing of the claim cannot form the basis of a First Amendment retaliation claim.  *See id*.

         In sum, Plaintiff's claims fail because she makes no allegation within her amended complaint that states or suggests that any of her speech or petition activity "[sought] to communicate to the public or to advance a political or social point of view beyond the employment context." *Myers*, 131 S.Ct. at 2501.  Indeed, in her opposing brief, Plaintiff concedes that she did not allege as much, but argues that dismissal would be premature without development of the record through discovery.  However, whether she spoke or petitioned on matters of public concern is within her knowledge and does not depend on discovery to be revealed, and thus the issue is appropriately considered on a motion to dismiss.  As it stands, Plaintiff's amended complaint simply provides that Plaintiff was acting in her own personal interests while engaged in the conduct she characterizes as "speaking" or "petitioning."  This is not enough to constitute protected activity.  Accordingly, Plaintiff has failed to

allege a prima facie claim of First Amendment retaliation,[10] and the court will dismiss Count I of the amended complaint.

## B.  Religious Discrimination Claim Under Title VII

In Count II of the amended complaint, Plaintiff alleges that the County willfully and unlawfully discriminated against her on the basis of her religion in violation of Title VII.  Title VII makes it illegal for an employer to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment on the basis of religion.  *See* 42 U.S.C. § 2000e-2(a)(1).  "Religion" is defined as "includ[ing] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).

Under Title VII, employees may assert two different theories of religious discrimination: disparate treatment and/or failure to accommodate.  *E.E.O.C. v. Aldi, Inc.*, Civ. No. 06-1210, 2008 WL 859249, *5 (W.D. Pa. Mar. 28, 2008) (citing *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 281 (3d Cir. 2001)).  Here, Plaintiff has not alleged disparate treatment but only failure to accommodate.  To establish a prima facie case for failure to reasonably accommodate religious beliefs or practices, the plaintiff must show: (1) that she holds a sincere religious belief that conflicts with a job requirement; (2) that she informed her employer of the conflict; and (3) that she was disciplined for failing to comply with

---

[10]  Because Plaintiff failed to show the first element of her prima facie case, it is unnecessary for the court to address whether Plaintiff sufficiently pleaded that she suffered an adverse employment action as a result of protected conduct.  It is likewise unnecessary to address whether Plaintiff adequately asserted individual liability against Defendants Peiffer and Schlegel, and whether the County can be held liable under *Monell*.

the conflicting requirement. *Webb v. City of Phila.*, 562 F.3d 256, 259 (3d Cir. 2009). If the plaintiff establishes these factors, the burden shifts to the employer to show either that it made a good-faith effort to reasonably accommodate the religious belief, or that such an accommodation would cause an undue hardship to the employer and its business. *Id.*

Plaintiff's Title VII claim fails under the third prong of the prima facie case because she does not allege that she was disciplined for failing to comply with the conflicting requirement. Rather, Plaintiff alleges that, after informing the County of her religious conflict with her revised schedule, the County removed her Sunday hours. (Doc. 21, ¶ 37.) Although the County did not remove her evening and Saturday hours, Plaintiff does not allege that she was disciplined for refusing to work at those times. Rather, Plaintiff alleges that, upon the expiration of her medical leave, she did not return to work because the County did not accommodate the conditions Plaintiff placed on her return, including a new supervisor and regular weekday work hours. (*Id.* at ¶¶ 43-46.) Significantly, Plaintiff does not allege that she told her employer that she was seeking further changes to her schedule due to a religious conflict. To the contrary, the March 23, 2012 letter[11] from Plaintiff's counsel to the County regarding the requested accommodations states that Plaintiff needed to work regular weekday hours due to her "medical restrictions," not because of her religious practices. (Doc. 21-12, p. 3 of 5.) Because there is a complete dearth of allegations linking an adverse employment action to a discriminatory intent, the court easily concludes that Plaintiff has failed to plead a prima facie case of religious

---

[11] The court may properly consider Plaintiff's statements in the March 23, 2012 letter because it is attached to the amended complaint and Defendants do not dispute its authenticity. *See Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006).

discrimination in violation of Title VII.  Accordingly, the court will dismiss Count II of the amended complaint.[12]

## C.    **Disability Discrimination Claim Under the ADA**

In Count III of the amended complaint, Plaintiff alleges that the County failed to accommodate her disability in violation of the ADA.  The County has moved to dismiss this claim on the ground that Plaintiff only offered to return to work on the condition that she would no longer be required to report to Supervisor Krammes, and that such an accommodation is unreasonable as a matter of law.  The court agrees.

The Third Circuit has defined the parameters of a failure to accommodate claim as follows:

> The ADA specifically provides that an employer "discriminates" against a qualified individual with a disability when the employer does not "'mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer].'" . . . "Reasonable accommodation" further "includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith" . . . , under what has been termed a duty to engage in the "interactive process."

*Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751 (3d Cir. 2004) (internal citations omitted).  "[F]ailure to engage in the interactive process, in itself,

---

[12] In her brief in opposition, Plaintiff claims that Defendants failed to address her Title VII claims of "religious harassment, retaliation, and discrimination with respect to work conditions." (Doc. 26, p. 19.)  Aside from Plaintiff's conclusory allegations, she has failed to allege that any adverse action was taken as the result of an anti-Christian animus.  Therefore, to the extent Plaintiff intended to raise such claims in her amended complaint, those claims would also fail. *See Aldi*, 2008 WL 859249 at *17 (stating that, in order to succeed on a religious retaliation claim, the plaintiff must prove that religious animus was more likely than not a motivating or determinative cause of the adverse employment action).

does not constitute" a violation of the ADA. *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 194 (3d Cir. 2009). In order to establish a prima facie case for failure to accommodate under the ADA, the plaintiff must show that "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Stadtmiller v. UPMC Health Plan, Inc.*, 799 F. Supp. 2d 492, 504-05 (W.D. Pa. 2001) (citing *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). Assuming, *arguendo*, that Plaintiff qualifies as disabled under the ADA by virtue of her anxiety and depression, she has not plausibly alleged that the County failed to accommodate her disability.

In her brief in opposition to the motion to dismiss, Plaintiff acknowledges that the Hobson's choice that her counsel presented to the County in the February 28, 2012 letter – no longer require Plaintiff to report to Supervisor Krammes or else she will not return to work – is the requested accommodation at issue here.[13] (*See* Doc. 26, pp. 19-21.) Such an accommodation is unreasonable as a matter of law.

In *Gaul v. Lucent Technologies*, 134 F.3d 576, 581 (3d Cir. 1998), the Third Circuit addressed whether an employee's request to be transferred away from individuals who cause him prolonged and inordinate stress was a reasonable proposed accommodation. Noting that the plaintiff was essentially asking the court "to establish the conditions of his employment, most notably, with whom he will work,"

---

[13] For purposes of the instant motion, the County concedes that they failed to engage in the interactive process. (Doc. 27, p. 6.)

the court determined that the proposed accommodation was unreasonable as a matter of law.  The court explained:

> [N]othing in the ADA allows this shift in responsibility. Indeed, nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy.  Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons.

*Id*. (internal quotation marks and citations omitted).  It therefore follows that a request to return to work under a different supervisor is likewise unreasonable.  *See id.*; *Coulson v. The Goodyear Tire & Rubber Co.*, 31 F. App'x 851, 858 (6th Cir. 2002); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 526 (7th Cir. 1996); *Larson v. Virginia Dep't of Transp.*, Civ. No. 5:10-cv-0136, 2011 WL 1296510, *2 (W.D. Va. Apr. 5, 2011) (compiling cases reaching the same conclusion).  That Supervisor Krammes's harassment was the alleged genesis of Plaintiff's disability does not distinguish this case from *Gaul*.  *Larson*, 2011 WL 1296510 at *2 (citing *Coulson*, 101 F.3d at 524-25) (noting that the plaintiff asserted that her disabilities were caused by her supervisor).  Further, although it has conceded the issue for purposes of this motion, the County did not have a duty to engage in discussions with Plaintiff regarding such a clearly unreasonable proposed accommodation, particularly since she made it clear that her willingness to return to work was conditioned on the County's compliance with her request.  *See id*.  Accordingly, because Plaintiff's

requested accommodation was unreasonable as a matter of law,[14] the court will grant Defendants' motion to dismiss in this regard.

### D.    Claims Under the PHRA

Plaintiff asserts disability and retaliation claims pursuant to the PHRA in Count IV of the amended complaint, .  The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus a court may dispose of both ADA and PHRA claims on the same grounds.  *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 142 n.5 (3d Cir. 2011). The same is also true for PHRA and Title VII claims.  *See Lanza v. Postmaster General of the U.S.*, Civ. No. 13-4562, 2014 WL 2898535,*217, — F. App'x — (3d Cir. June 27, 2014) (addressing Title VII and PHRA claims simultaneously). Accordingly, for the same reasons set forth in Parts III B and C, *supra*, the court will dismiss Plaintiff's PHRA claim for the same reasons set forth above.

### E.    Intentional Infliction of Emotion Distress Claim

In Count V, Plaintiff asserts a claim for intentional infliction of emotional distress against Defendant Schlegel.  Intentional infliction of emotion distress is a state tort claim governed by Pennyslvania substantive law, and the exclusivity provision of Pennsylvania's workers' compensation statute bars claims for "intentional and/or negligent infliction of emotional distress [arising] out of [an] employment relationship."  *Matczak v. Frankford & Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997).

---

[14]  Plaintiff has attempted to insert an allegation that the County denied her request for additional leave.  (*See* Doc. 26, p. 21.)  Plaintiff makes no allegation in the amended complaint that she requested additional leave as an accommodation.  Rather, her counsel's March 23, 2012 letter clearly indicated that Plaintiff was not returning to work because the County did not accommodate the requests made in the February 28, 2012 letter.  (Doc. 21-12, p. 3 of 5.)

Further, even absent this statute, Plaintiff's claims do not rise to the level required for an intentional infliction of emotional distress claim. Plaintiff's allegations that Defendant Schlegel made demeaning comments regarding her work performance, including statements that "a blind person could do better than you" and questioning whether Plaintiff "want[ed] to sign [her] resignation now" (Doc. 21, ¶ 29), these do not amount to "extreme and outrageous conduct," as required for an intentional infliction of emotional distress claim. *Id.*; *see Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010) (providing that the elements for an intentional infliction of emotional distress claim include: "(1) a person who by extreme and outrageous conduct (2) intentionally or recklessly cause[d] (3) severe emotional distress to another"). Recovery for an intentional infliction of emotional distress claim will be allowed only "where the conduct is 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Salerno v. Philadelphia Newspapers, Inc.*, 546 A.2d 1168, 1172 (Pa. Super. 1988). The Third Circuit has noted that "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Matczak*, 136 F.3d at 940 (citing *Cox. v. Keystone Carbon Co.*, 861 F.2d 390, 394 (3d Cir. 1988); *see also Syed v. YWCA of Hanover*, 906 F. Supp. 2d 345, 361 n.13 (M.D. Pa. 2012) (noting same and collecting cases). Defendant Schlegel's conduct, while possibly constituting "bullying and abuse" (*see* Doc. 21, ¶ 29), could not be considered so "extreme and outrageous" as to meet the high threshold to support an intentional infliction of emotional distress claim. Thus, the court will grant the motion to dismiss Count V

based on the exclusivity provision of Pennsylvania workers' compensation statute and Plaintiff's failure to allege extreme and outrageous conduct on the part of Defendant Schlegel.

**IV.**      **Conclusion**

For the reasons set forth above, the court will grant Defendants' motion to dismiss in its entirety.  However, "a district court must permit a curative amendment unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).  The court will grant Plaintiff leave to amend her complaint to provide her with yet another opportunity to submit an adequate pleading.  It does so to ensure the client's rights are not lost as a result of Plaintiff's failure to recognize the requirements of pleading post-*Twombly* and *Iqbal*, interjecting a plausibility standard whereby the pleadings must rise to a more than mere speculative level.  Plaintiff is advised to submit a well-pleaded complaint, as she will not have another opportunity to amend.

An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated:  September 23, 2014.